### Hirshberg v. Ciconett.

(Decided February 6, 1912.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

Partnership—Disagreement—Settlement by Court Commissioner.—
In this case the parties who were partners in the Falls City Mirror Works of Louisville, where they operated from November 1, 1903 to August 1, 1905, when they disagreed and undertook to make a settlement. Their case was referred to the court's commissioner, who reported that appellee's services were of value, and found that after paying all the debts and the costs of the action there was only about $500.00 left, and of this he gave appellee $400.00 and appellant $100.00. Held, that the lower court's finding is correct and is affirmed.

JNO. S. JACKSON for appellant.

W. A. SPINDLE for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

In the fall of 1903 the parties to this action became partners in the Fall City Mirror Works of Louisville. A great deal of testimony in the action was taken to show which of the parties induced the other to enter

into the partnership, but this is immaterial. Appellee was engaged in the business previous to the formation of the partnership, but on a very small scale. He was a good workman but seems to have had but little machinery and supplies with which to run his business and was very much in need of financial help. Appellant agreed to become his partner and to furnish machinery and supplies, to pay the operating expenses and keep the books, as appellee was unable to read or write, and to pay appellee a salary, in consideration of which appellant was to receive all the proceeds from the concern until he was repaid the amount he had expended, after which they were to divide the profits equally. They operated the business from November 1, 1903, to August 1, 1905, under a verbal agreement. Appellee claims that the machinery and supplies he had on hands at the time the partnership was formed, which went into the partnership were worth $500, much of which was glass used in the business. Appellant denies that he owned anything of value, and claims that he, out of his own means and those derived from the business, furnished everything to August 1, 1905, at a cost of $3,000. As stated, on August 1, 1905, the parties entered into a written contract of partnership in which it was agreed that appellant had furnished $3,000 of his individual means. The writing also gave the terms of the partnership as above stated. It is agreed that before this writing was executed appellee complained from time to time because the firm did not have a bookkeeper other than appellant, who kept the books at his place of business several blocks from the Mirror Works. Whenever it was necessary to receive or pay out money at the factory, appellee would attend to it and report to appellant the following night at his place of business. The parties did not seem to get along any more amicably after the contract was reduced to writing than they did before, but appellee continued in the partnership until September 23rd, at which time appellant claimed he was receiving money from the out-put of the factory and not accounting for it, and took the keys of the factory from appellee and drove him from the premises, and continued the business himself from that time until March, 1906. Soon after appellant drove appellee from the premises, appellee brought this action alleging that he was driven from the premises and the keys taken from him without cause. He also set forth the terms of the contract of partner-

ship, and alleged that appellant claimed that he had invested $3,000 of his individual means in the partnership business, and that by deceit of appellant such a statement had been put into the articles of partnership. He alleged that he was ignorant; that he was unable to read or write; that he really knew but very little about the partnership transaction; that he had relied solely upon appellant to conduct the financial part of the business; that he had been deceived by him, and asked that the partnership be placed in the hands of a receiver for the purpose of winding up the affairs of the concern and making a fair settlement between the parties. Appellant answered denying all the material allegations of the petition, and alleging that appellee was an expert beveler and silverer of glass and was in possession of a secret process with which to do such work, which was worth $1,000 and belonged to the firm by reason of the partnership. It was not alleged, however, that the written contract failed to state this fact by reason of either fraud or mistake. By agreement of parties, the matter was referred to the commissioner to take proof and settle the affairs and report his conclusions to the court. The commissioner took six hundred and fifty odd pages of testimony, three hundred and fifty of which were the deposition of appellant alone. He reported, in substance, to the court that the books as kept by appellant, were unintelligible, that the testimony not only failed to help him to understand them but confused him, and that he could not, therefore, arrive at a fair setlement between the parties from the books; but stated that the testimony showed that appellee was a good workman in his line; that his services were worth so much per week, and brought the partnership out in debt to appellee in the sum of $2,000 or more. Both parties filed exceptions to the report and the court sustained them upon the idea that the commissioner made the settlement upon the wrong basis, as he had no right to charge the firm for services rendered by appellee. The court determined that the matter should be settled as near as possible according to the books and the terms of the contract, and proceeded upon this idea and found that there was only about $500 left after paying all the debts and the costs of the action, and he gave appellee $400 and appellant $100.

Appellant's counsel contend that the court must be governed by the books of the partnership as kept by ap-

pellant; that the entries in the books, which are copied in the record, giving all the debits and credits, and that according to them appellee is indebted to appellant, and, therefore, appellant is entitled to a reversal of this judgment. This rule is correct when the parties to a partnership are on equal footing, which is always presumed, unless the contrary is shown. In the case at bar, however, appellant knew that he made all the entries in the books and that they were made in the absence of appellee; that if appellee had been present he could not have read them and that if he could have read them, he could not have understood their meaning. This is an unusual case and the law which generally applies in the settlement of partnership can not apply. We agree with the commissioner that the books are unintelligible, and that they were incorrectly kept or that appellant violated his contract of partnership. Appellee's purpose of having appellant as a partner was to obtain the benefit of his money in purchasing machinery and supplies with which to operate the plant. We have examined the statements taken from the books with care, and think $200 would more than cover the value of the machinery put into the plant, and that $200 more would cover all repairs made up to July, 1905, and that $1,400 would have paid for all the supplies purchased. With this small amount of machinery and supplies with which to manufacture mirrors, it is not strange that no income of any consequence was received. It is true that during the latter days of July and thereafter, when appellant had entire control of the business, he purchased many more supplies than before. Apparently, appellant managed and controlled this factory as though he owned it individually. For the first six months appellee received a salary of $6 a week, then for a while he received $9 a week and afterwards $10 per week. Appellant did none of the manual labor at the factory, and after the date of the written contract he credited himself with 5 per cent. of all the sales from the factory, as allowed by the contract.

The pleadings and depositions in the case convince us that the feelings between the parties were such that neither party desired to arrive at the exact facts of the partnership, but each was trying to get the advantage of the other, and the ability and education of appellant enabled him to obtain an advantage over appellee.

We can not say that the lower court erred in arriving at the judgment appealed from, therefore, it is affirmed.